IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| REGINA R. BOONE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:14CV00146 SWW |
| | * | |
| DEPARTMENT OF COMMUNITY CORRECTION, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**Opinion and Order**

Before the Court is defendant's motion for summary judgment to which plaintiff responded. Defendant filed a reply to the response. For the reasons stated below, the motion is granted.

**Background[1]**

Plaintiff Regina R. Boone ("Boone") was employed by defendant Department of Community Correction ("DCC") as an administrative assistant. For a period of approximately three weeks around June of 2011, another DCC administrative assistant, Brandon Wilson ("Wilson"), made comments to Boone about her body. He also made comments to Boone about other women. Ms. Boone reported Wilson's comments to Lois Pugh ("Pugh"), an assistant area manager and Boone's supervisor at the time. Ms. Boone also told Pugh she had heard that Wilson had shown a photograph of his penis to two women and that he made sexually-related comments on his Facebook page about women with whom he worked. Mr. Wilson did not

---

[1]The background information is taken largely from defendant's Statement of Undisputed Facts (ECF No. 15-1) and plaintiff's response (ECF No. 22).

mention Boone's name in the Facebook posts.  Ms. Boone told Pugh that Wilson was saying things that made her feel uncomfortable and asked Pugh to speak with him.  Ms. Boone did not ask Pugh to take any particular action against Wilson.

Ms. Pugh told Boone she would speak with Wilson, and the next day Pugh and the area manager met with Wilson.  After the meeting, Wilson was quiet and did not say much to Boone.  About a month or two later, Wilson began making comments to Boone again.  At some point, Boone reported again to Pugh about Wilson's behavior, telling Pugh that Wilson was back making inappropriate remarks.   Ms. Pugh told Boone she would talk with Wilson.

In about June 2012, Boone's supervisor, Kristie Baker, told Boone that one of Boone's co-workers told Baker that Wilson had shown nude pictures of Boone to a coworker.  Ms. Baker told Boone she would meet with her and Wilson regarding the incident.  The next day, Baker met with Boone and Wilson, and Wilson said he had gotten the picture from Boone's personal e-mail.  Ms. Boone had been using her work computer to log on to her  personal e-mail account, and there was a naked picture of her in her "sent" e-mail folder.  Ms. Boone said she did not share her e-mail password with Wilson but she did not always log off her computer when she was away from it.  In the meeting, Wilson apologized to Boone and Boone asked that Wilson be moved from her workstation area.  Three days later, on June 15, 2012,  Boone filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging she was subjected to sexual harassment.  On or about August 12, 2012, Boone terminated her employment with DCC.

The EEOC issued a right-to-sue letter on December 10, 2013, and Boone filed the complaint before this Court on March 10, 2014.  Ms. Boone alleges she was subjected to a hostile work environment and was threatened with termination when she complained about it.

The DCC argues it is entitled to summary judgment as to any sexual harassment that occurred prior to December 15, 2011, because Boone failed to timely file a charge with the EEOC. The DCC asserts Boone failed to exhaust her administrative remedies as to her retaliation claim as she did not mention retaliation in her EEOC charge. In the alternative, DCC contends Boone offers insufficient evidence to establish a retaliation claim. Lastly, the DCC argues the conduct about which Boone complains does not rise to the level of an actionable Title VII claim.

### Standard of Review

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to entry of judgment as a matter of law." Fed.R.Civ.P. 56 (a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must come forward with specific facts that establish a genuine dispute of material fact. *Id*. at 587. A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v, Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). The court must view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 711 (8th Cir. 2013).

"There is no 'discrimination exception' to the application of summary judgment, which is a useful tool to determine whether any case, including one alleging discrimination, merits a

trial." *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). Accordingly, this Court applies the same summary judgment standard to discrimination cases as it does to all others.

## Discussion

1. Harassment Claim

Under 42 U.S.C. § 2000e-(5)(c), a plaintiff must file a charge of discrimination with the EEOC within 180 days of the event giving rise to the action. "Conduct which occurred more than 180 days before the date of filing cannot be grounds for a suit unless the conduct is part of a continuing violation that is systemic or serial. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). "To avail [herself] of this exception, a plaintiff must demonstrate that some incident of harassment occurred within the [180] day limitation period." *Id*. "The Supreme Court has held that the continuing violation doctrine applies in hostile work environment claims, where, although one incident may not support a claim, the claim may be supported by a series of incidents that occur over a period of time . . .". *Betz v. Chertoff*, 578 F.3d 937-38 (8th Cir. 2009)(citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Ms. Boone complains about acts occurring in June 2011 through June 2012. She filed a charge of discrimination on June 15, 2012. Because Boone filed a charge within 180 days of any act that is part of the hostile work environment, the acts about which she complains are not time-barred.

To establish a *prima facie* case of a hostile work environment based on sexual harassment, Boone must produce admissible evidence that (1) she was a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) that her

4

employer knew or should have known of the harassment and failed to take appropriate remedial action. *Jackson v. Fifth Judicial Dist. Dep't of Correctional Servs.*, 728 F.3d 800, 805-06 (8th Cir. 2013).

Defendant DCC argues that the conduct about which Boone complains was not sufficiently severe or pervasive to constitute an actionable hostile work environment claim.

> The standard for demonstrating a hostile work environment on the basis of sexual harassment is a demanding one. 'Title VII does not prohibit all verbal or physical harassment and [it] is not a general civility code for the American workplace.' Actionable conduct must therefore be extreme rather than merely rude or unpleasant. A plaintiff must establish that discriminatory intimidation, ridicule, and insult permeated the workplace. In determining whether a plaintiff has demonstrated a hostile work environment, we consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance.

*Cross v. Prairie Meadows Racetrack and Casino*, 615 F.3d 977, 981 (8th Cir. 2010) (internal citations omitted). "This is a high bar, and it requires a showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Brannum v. Missouri Dep't of Corrections*, 518 F.3d 542, 548 (8th Cir. 2008)(internal citation and quotation omitted). "A recurring theme to be derived from [Supreme Court] cases 'is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Viewing the evidence in the light most favorable to the plaintiff, the Court finds Boone fails to demonstrate that Wilson's conduct "was so intimidating, offensive, or hostile that it poisoned the work environment." *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006)(internal citations omitted). Ms. Boone testified that for about three weeks

during June of 2011, Wilson made comments to her several times a week about her body and about other women. He said things like "'You've got a fat ass. You looking right in them jeans. Your titties sitting right.'"[2] Ms. Boone complained to Pugh about Wilson's remarks and also told Pugh that she heard from two co-workers that Wilson showed them and another female co-worker a photo of his genitals. She also showed Pugh screen shots from Facebook of sexual remarks Wilson made about unidentified co-workers.[3] Ms. Boone says Wilson stopped his offensive behavior for a few months then began to make the same kinds of comments to Boone.[4] A year later, in June 2012, Boone learned that Wilson had shown nude pictures of her to a co-worker.[5]

The incidents were infrequent, spanning a twelve-month period. While clearly inappropriate and disgusting, taken together they are not so "severe or pervasive" as to alter the conditions of Boone's employment and create an abusive environment. *See Duncan v. General Motors Corp.*, 300 F.3d 928, 935-6 (8th Cir. 2003)(while behavior that took place over a two-year period was "boorish, chauvinistic, and decidedly immature," it was "not so intolerable as to cause a reasonable person to resign").

Furthermore, Boone has not shown that DCC failed to take prompt and remedial action. When she first reported Wilson's behavior, Pugh met with Wilson the next day. When Boone complained again a few months later, Pugh said she would talk with Wilson again. In June

---

[2] Def's. Mot. Summ. J., Ex. 1 (Boone Dep.) At 29-30

[3] *Id*. at 31-33, 35-36.

[4] *Id*. at 39-40.

[5] *Id*. at 48-49.

2012, when their supervisor met with Boone and Wilson about the nude photos, Wilson was reprimanded and told he would be terminated if his conduct continued.

The Court finds no genuine issues of fact for trial with respect to Boone's hostile environment claim.

2. Retaliation Claim

Defendant DCC argues that Boone failed to exhaust EEOC administrative remedies because she did not check the box labeled "retaliation" on the EEOC charge form and her narrative statement of the discriminatory conduct does not establish a retaliation claim. In response, Boone points out that in the body of her complaint, she states that after complaining about Wilson's behavior in June 2012, she "received a verbal warning that if the issue was not resolved [she and Wilson] would both be terminated."[6] This, Boone says, indicates that she was threatened with her job if she did not drop the matter.[7]

In most cases, to exhaust Title VII's administrative remedies an individual must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge within 180 days of the discrimination and (2) receive notice from the EEOC of the right to sue. *See* 42 U.S.C. § 2000e-5(b), (c), and (e). While a charge of discrimination "need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 697 (8th Cir. 2009)(internal quotations omitted). "If the EEOC gives the individual a right-to-sue letter following the EEOC

---

[6]Compl. at 9 (EEOC Charge of Discrimination).

[7]Pl's. Br. in Supp. of Resp. to Mot. Summ. J. [ECF No. 23] at 18.

investigation, the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Cottril v. MFA, Inc*., 443 F.3d 629, 634 (8th Cir. 2006)(internal citation and quotation omitted).  Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Wallin v. Minnesota Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998).  The Court finds that even if Boone's EEOC charge is sufficient to allege retaliation, she has failed to establish a case of retaliation.

To establish a retaliation claim, a plaintiff generally must show that she engaged in protected conduct, was subjected to an adverse employment action, and there is a causal connection between the protected conduct and the adverse action.  *Lewis v. Heartland Inns of Am., LLC*, 591 F.3d 1033, 1042 (8th Cir. 2010).  Boone must prove that her protected activity was the "but-for" cause of the challenged employment action.  *Musolf v. J. C. Penney Co.*, 773 F.3d 916, 918-19 (8th Cir. 2014).  If a plaintiff makes a *prima facie* case, the burden shifts to the employer "to articulate a legitimate, non-retaliatory reason for the adverse action."  *Id*.

Boone asserts her supervisor threatened her with termination for complaining about Wilson showing a nude picture of Boone to a co-worker.  The record establishes that it was Baker who brought Wilson's conduct to Boone's attention.  After learning that Wilson accessed the picture by getting into Boone's personal e-mail account which Boone had open on her office computer, Baker counseled both Wilson and Boone for their behavior.

In *Littleton v. Pilot Travel Ctr. LLC*, 568 F.3d 614, 644 (8th Cir. 2009), Littleton filed a

race discrimination charge with the EEOC. A number of months later, the general manager complained about Littleton's conduct toward a customer, and after an investigation, Littleton received a "Correction Notice." The notice set forth a number of infractions and stated that "[f]ailure to correct & not repeat these issues will result in immediate termination of employment." *Id*. at 643. Littleton signed the form but protested that the charges were false. He then filed a second EEOC charge alleging retaliation for the earlier charge. The Eighth Circuit said:

> [T]to be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.' *Gilbert v. Des Moines Area Cmty. Coll.,* 495 F.3d 906, 917 (8th Cir.2007). Thus, we have concluded that commencing performance evaluations, or sending a critical letter that threatened 'appropriate disciplinary action,' or falsely reporting poor performance, or 'lack of mentoring and supervision' were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee. *See Weger v. City of Ladue,* 500 F.3d 710, 727 (8th Cir.2007); *Gilbert,* 495 F.3d at 917; *Devin v. Schwan's Home Serv., Inc.,* 491 F.3d 778, 786 (8th Cir.2007); *Higgins v. Gonzales,* 481 F.3d 578, 590 (8th Cir.2007).
>
> Here, Littleton has not shown that the Correction Notice harmfully impacted his employment. He did not suffer a loss of pay or hours, his responsibilities did not change, and he was not excluded from any training or mentorship available to other employees. On the other hand, he was explicitly threatened with termination unless he stopped harassing other Pilot employees.

*Id* at 644. The Eighth Circuit determined that a deeper examination of the circumstances was warranted because Littleton disputed the charges. Here, Boone does not dispute that she had used the office computer for personal matters and had conducted personal business during work hours, *i.e.* having a colleague repair her personal cell phone, in violation of DCC policy. In addition, Baker's admonition came months after Boone complained of Wilson's inappropriate conduct and there is no evidence that Baker was aware of Boone's previous complaints to Pugh about Wilson's behavior. Accordingly, the Court finds no genuine issues for trial on the

9

retaliation claim.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [ECF No. 14] is granted.  Plaintiff's claims against defendant are dismissed with prejudice.  Judgment will be entered accordingly.

DATED this 8th day of October, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE
